Bullard *v.* Hinckley.

BULLARD *vs.* HINCKLEY.

Land being under mortgage, A, a creditor of the mortgagor, attached his right in equity of redemption. Afterwards B, another creditor, attached the fee. A, having obtained judgment, caused the right in equity to be seized in execution and sold by the sheriff; after which the mortgagee made a deed of release and quitclaim of his right in the land, to the mortgagor.—It was held that by this deed the original mortgagor became the assignee of the mortgage, invested with the character of a mortgagee;— and that B, the second attaching creditor, who subsequently obtained judgment in his suit, could not take the land for his debt, there having been no entry to foreclose the mortgage;—and that a deed of release and quitclaim, afterwards given by the original debtor to the purchaser of the equity of redemption, vested in the latter the title to the whole fee.

A deed of quitclaim from the mortgagee to the mortgagor does not operate to extinguish the mortgage till it is delivered, although it may previously have been put on record by the mortgagee.

In this case, which was a writ of entry, both parties claimed the land under levies of executions against one *Houghton*, the former owner.

The demandant, who was a creditor of *Houghton*, deduced his title from an attachment of the fee, *March* 28, 1824, and a regular course of subsequent proceedings, perfected by an extent of his execution upon the land, which was set off as the estate of *Houghton* in fee, in due form of law, *May* 28, 1825, being within thirty days after judgment; which proceedings were duly registered, and the execution returned.

The tenant proved that the same land was mortgaged by *Houghton* to one *Larrabee*, *June* 1, 1822, to secure the payment of 850 dollars on or before *June* 1, 1828; which mortgage was recorded *March* 13, 1824. On the 19th of *March* 1824, all *Houghton's* right, title and interest in the land was attached at the suit of *David Dunlap* against him and others; judgment was recovered in that

Bullard *v.* Hinckley.

suit at the *June* term following; the execution being duly issued, *Houghton's* right in equity of redemption was taken in execution *July* 12, and advertised for sale, and due notice given, being within thirty days after judgment; pursuant to which advertisement it was sold by auction, according to law, *Aug.* 17, 1824, and a deed of conveyance thereof given on the same day, by the officer, to Mr. *Everett*, who was the judgment creditor's attorney. The right in equity, thus sold, not having been redeemed by *Houghton*, Mr. *Everett* conveyed the premises to the tenant *Aug.* 2, 1825, by deed of quitclaim.

To rebut this evidence, the demandant produced a copy of a deed from *Larrabee* to *Houghton*, dated *July* 15, 1824, and recorded on the following day. wherein, for the consideration expressed of 150 dollars, he professed to convey to *Houghton*, by release and quitclaim, all his interest in the land. And he proved that personal notice of the existence of this deed was given to Mr. *Everett*, by his agent, on the first day of *August.*

He also produced a copy of a deed of quitclaim of the same land from *Houghton* to the present tenant, dated *July* 29, 1825; expressly referring to *Larrabee's* deed thereof to him above mentioned, to fix the identity of the land, as the same which he held by that deed.

The tenant then proved that the deed of release from *Larrabee* to *Houghton* was prepared and recorded at *Larrabee's* request and expense; that *Houghton* had then been absent from the State for about two years, and did not return till the autumn of 1824, or the winter following; that no person was present at its execution but the grantor, the scrivener, and the other subscribing witness; and that after the registry of the deed, it was returned by the scrivener to *Larrabee*. There was no other evidence of its delivery.

Hereupon the tenant contended that it was not competent for *Larrabee*, by these transactions, to defeat the seizure of the right in equity; by which, and due notice thereof, the rights of the judgment creditor were perfectly vested;—and that if it was competent for the mortgagee in such a case to dissolve the mortgage at his pleasure, yet having, in the present case, undertaken to do it by a deed of quitclaim,

35

Bullard *v.* Hinckley.

the deed could have no operation till it was delivered, which was not till after the sale of the right in equity. Both these points the Chief Justice, before whom the cause was tried, reserved for the consideration of the court, and directed a verdict to be returned for the demandant, subject to their opinion.

*Greenleaf* and *Everett*, for the tenant, insisted on these points. 1. That the release of *Larrabee* to. *Houghton* was fraudulent and therefore void, as was evident from the inadequacy of consideration, and the other circumstances in proof respecting it.

2. That if it was not void, yet it could not take effect till delivery; which was not till long after the sale of the right in equity by the sheriff. But clearly it could not operate on a creditor without notice; and here was none given till the thirty days after judgment had expired; so that unless the judgment creditor could still proceed as upon a right in equity already taken in execution, his lien on the property would be gone.

3. The *Stat.* 1821, *ch.* 60, *sec.* 1, which preserves the lien of an attaching creditor upon the fee, after a mortgage upon it is discharged, applies only to mortgages actually redeemed, pending an attachment on mesne process. But here was no attachment on mesne process then pending, but a seizure in execution. Nor was it a redemption by the debtor, but a gratuitous and fraudulent release by the creditor, in his absence, and without his assent.

4. The proceedings under the sale of an equity of redemption have relation to the time of seizure. But *Houghton's* right in equity was displaced by the seizure, and finally transferred by the sale, so that he had nothing, at the time of making the release, on which it could legally operate. *Barker & al. v. Parker & al.* 4. *Pick.* 505.

*Orr*, for the demandant. The intent of the *Stat.* 1821, *ch.* 60, was to place all attaching creditors on equal ground, after the redemption of the mortgage; preserving the lien of those who had attached the right in equity only, and transferring it to the fee. Thus the prior attachment, in either mode, is first to be satisfied. Upon this ground the seizure in execution, by *Dunlap*, was but a continuance of his lien created by the attachment; to perfect which he should

Bullard *v.* Hinckley.

have extended his execution on the fee, as soon as the mortgage was discharged.

And this discharge was valid. The presence of the mortgagor is not necessary to an extinguishment of the mortgage. The statute provides that it may be done in his absence, by the mortgagee, by an entry in the margin of the record. If, instead of going in person, he sends a release, the effect is the same. Whether the money was actually paid, or not, is of no importance, since it was a good release of the debt, by deed under the seal of the creditor ; against whom it is a perpetual bar. And the tenant is estopped to deny this deed, since it is recited in the deed from *Houghton* to him, as the basis of his title.

The opinion of the Court was drawn up by

MELLEN C. J. If nothing rendered the sale of *Houghton's* equity of redemption by the sheriff ineffectual, it follows that by the proceedings stated in the report, the tenant became the owner of this equity. And if *Larrabee's* release to *Houghton,* bearing date *July* 15, 1824, after the right in equity had been seized, did not operate to extinguish the mortgage, then it did not render the sale of the equity ineffectual, but only operated as an assignment of his right and title as mortgagee to *Houghton ;* and therefore when *Houghton* made his release to the tenant on the 29th of *July* 1825, it constituted him the owner of the estate in absolute fee simple, by uniting the two parts of the estate in him ; that is, the fee and the right of redemption.

This leads us to inquire when the release from *Larrabee* to *Houghton* took effect, and how it operated when it did take effect. Now it appears from the report, that though it was recorded *July* 15, 1824, on the day of its date, yet it was sent to the registry by *Larrabee* himself, *Houghton* being then and for some months after, out of the State ; and of course the release could not have been delivered till several months after the equity of redemption was sold to *Everett,* nor have any effect till its delivery. To construe the deed from *Larrabee* to *Houghton* as an extinguishment of the mortgage, operating as such, before the sale of the equity, would defeat the rights of *Dun-*

lap, who had seized it on execution ; and to construe the deed as an extinguishment after the sale of the equity, would operate to cause the deed to enure to the benefit of *Everett* and not to that of *Hough-ton.* The release, under the circumstances of this case, could not operate to the prejudice of the tenant ; but on the contrary it could and did operate by way of assignment of *Larrabee's* title as mortgagee ; it was a release to him of the land ; and this was released by *Houghton* to the tenant, as before mentioned, making him absolute owner of the whole estate. It has been contended that the release to *Houghton,* being recorded before the sale of the equity, was equivalent to an acknowledgment of satisfaction of the mortgage on the record. But we are of opinion that it must be considered only as a deed, and so operating only from its delivery. And this shews that notice of this release, given to *Everett* on the first of *August,* cannot affect his purchase of the equity on the 17th ; for notice of a deed that had not then been delivered, and which was then, and for months after, a dead letter, could avail nothing.

Has the demandant a better title than the tenant ? *Bullard's* attachment of the land as *Houghton's* was made *March* 28, 1824 ; nine days after *Dunlap* attached the equity of redemption ; and his levy on the premises was *May* 28, 1825. This was after *Larrabee's* deed to *Houghton* had been delivered, and was in force, as an assignment of *Larrabee's* title as mortgagee ; and it was before the date of the release from *Houghton* to the tenant. Still, such an estate could not be taken in execution for *Houghton's* debts ; it being only the estate held by him at that time as assignee of *Larrabee* the mortgagee ; for *Larrabee* never had entered to foreclose the mortgage. See *Blanchard v. Colburn & ux.* 16. *Mass.* 345. Of course *Bullard* gained no estate or title by means of his levy on the 28th of *May* 1825.

From this view of the cause it is evident that the demandant has no title. *Verdict set aside and a new trial granted.*