George J. RUBBELKE and Rose C. Rubbelke, Respondents,

v.

Dorothy Ann AEBLI, Appellant.

No. 48023.

Supreme Court of Missouri,

Division No. 2.

Dec. 12, 1960.

William G. O'Donnell, Abraham Davis, St. Louis, for appellant.

Ernest L. Keathley, Fred A. Gossom, St. Louis, for respondents.

BARRETT, Commissioner.

On April 14, 1959, a decree was entered in favor of the respondents, George J. and Rose C. Rubbelke, against Dorothy Ann Aebli. In substance the decree found the Rubbelkes to be the owners in fee simple of a house and lot in St. Louis County. In connection with the finding of the respondent-plaintiffs' ownership, the court found that the defendant Aebli claimed some interest in the property "as straw party and in trust for the plaintiffs" and that the defendant had no interest in the property. The decree recites that the defendant, although "served and having filed an answer herein, appears not." While the decree, as indicated, was entered on April 14, 1959, the record recites that it was "filed" June 22, 1959. On October 23, 1959, Miss Aebli filed a motion to vacate the judgment, alleging in her affidavit that when the judgment was entered she was not represented by counsel and the fact was known to the court and to plaintiffs, that she had "no recollection of ever receiving any notice of the date or time of the hearing of this mat-ter" or, for that matter of the case since 1956, believing that it had been dismissed. She stated that she first acquired knowledge of the judgment on August 25, 1959, when tenants informed her of a letter from plaintiffs' counsel enclosing a copy of the decree. She states that she then consulted counsel, that she has a valid and substantial defense to the action upon the merits in that she used her own funds to purchase the property, was not a straw party, and had executed a note and deed of trust on the property to secure $4,000 used in constructing the house on the lot. Her affidavit states that she had paid all taxes on the property for ten years and $1,500 in repairs and upkeep and that plaintiffs had no equitable right, title or interest in the property. As a ground for her motion to vacate the judgment Miss Aebli stated "That the verified petition of Plaintiffs was amended without notice to Defendant, on the day of hearing of this matter, contrary to the rules of Civil Procedure statutes of the State of Missouri, and that said Defendant was given no opportunity to object to said amendments or to file an answer to said petition as amended." The trial court overruled the motion to vacate the judgment and the defendant Aebli has appealed from that order.

The date of the institution of the suit, the date of the plaintiffs' amendment of their petition and of the hearing, and many other intermediate dates are very important and it is necessary, without italicizing certain significant dates, to keep them constantly in mind.

On the 23rd day of October 1954, the plaintiffs, husband and wife, instituted this action in two counts against Dorothy Ann Aebli. The first count stated that on May 3, 1947, the plaintiffs and Joseph Kral purchased the real estate, a lot, involved in this litigation and that the seller of the lot conveyed it to Dorothy Ann Aebli. They stated that thereafter, in 1949, they furnished one half of the work, labor and material used in erecting a one-story brick residence on the lot. They stated that prior

to the purchase of the lot and improvements "the said Kral stated to these plaintiffs and to many other persons, that said real property was purchased for the express purpose of erecting thereon a home and residence for the said Kral and these Plaintiffs" and that in consideration of furnishing one half the cost of the improvements and "providing and maintaining a home for the said Joseph Kral, Plaintiffs would have the right to live in and occupy said property as their home and residence during the lifetime of the said Joseph Kral" and at his death the plaintiffs would become the sole owners of the property. They alleged performance of the agreement on their part, that Kral died on September 1, 1954, but the defendant, Dorothy Aebli, refuses to recognize their ownership of the property. In Count I of their petition the plaintiffs prayed for a decree of specific performance "of said agreement as herein alleged." In the second count of their petition they alleged the payment of one half the purchase price of the property and by reason of that fact and the conveyance "Defendant thereby became a trustee for these Plaintiffs *to the extent of an undivided one-half interest therein.*" (Italics supplied.) Wherefore, as to Count II of the petition, the plaintiffs asked for a decree "declaring Defendant to be trustee of the said property for these Plaintiffs *to the extent of an undivided one-half interest therein * * *.*"

Thereafter, on November 22, 1954, two lawyers entered their appearance in the cause as attorneys for the defendant and were granted fifteen additional days in which to plead. On the 2nd day of December 1954, they filed a motion to dismiss the petition, that motion was overruled January 17, 1955, and the following day they filed an answer, in effect a specific denial of the essentials of the petition.

The next entry in this record, January 26, 1955, shows the withdrawal of these two lawyers as counsel for Miss Aebli. The next entry, nine months later, September 20, 1955, shows the entry of appearance of another lawyer as "associate counsel" for the plaintiffs, Mr. and Mrs. Rubbelke. The next entry, March 23, 1956, shows the withdrawal of another lawyer, whose name had not previously appeared, as counsel for the defendant. So from this date, March 23, 1956, until the filing of this motion to vacate in October 1959, Miss Aebli was without counsel and there were no other entries in this record until the court heard the plaintiffs April 14, 1959, and entered judgment June 22, 1959.

Before considering the merits of the appeal and the motion to vacate the judgment it is necessary to dispose of a preliminary matter. The parties were unable to agree upon the transcript in this particular proceeding, it is signed only by counsel for the appellant, it is not signed by counsel for the respondents; in any event the transcript was "settled and approved by the trial court." Sup.Ct. Rule 82.12(c), V.A.M.R. The appellant has filed in this court a "Motion To Incorporate Excluded Portion Of Transcript" and one of the points she briefs and argues is that the court erred in excluding evidence "presented at the hearing on the oral application for an injunction on June 14, 1955." It is inconceivable that either of the parties would ask for the incorporation of that document in this or any other record. On June 14, 1955, there was a hearing "On Oral Application For An Injunction" in which the Rubbelkes sought to enjoin Miss Aebli from taking any action against them or their ownership of the property. The request for an injunction had to do in part with the fact that Miss Aebli had previously instituted and prevailed in an unlawful detainer suit against the plaintiffs in a magistrate court and had evicted them from the premises. In any event, upon the hearing for an injunction the Rubbelkes did not claim ownership of the property or a trust of any kind, the substance of their claim was that Mr. Kral once showed them a deed in which they said the property had been reconveyed to Mr. Kral and "He told us we had nothing to worry about, we had a home for life," or "He told us

we were remembered in the will." On the other hand, although Miss Aebli had legal title to the property by reason of a warranty deed she did not know how much was paid for it, and although she had executed a deed of trust on the property securing a note in the sum of $4,000 she did not get the money and did not know what it was for or who got it.

■ At the conclusion of the hearing Judge LaDriere said, "I think I have heard enough to tell neither side is telling the truth." To the Rubbelkes and their counsel the judge said that their proof was not of a resulting trust and he denied the injunction. In conclusion Judge LaDriere said, "I will deny the injunction, but, at the same time, I think your defendant is not telling the truth, because she ought to know if she owns a piece of property, whether she paid money for it or not. She ought to know what she did with $4,000.00 when she mortgaged it, so she has not been frank with the Court. Let's not kid ourselves at all. I will deny the injunction, however, and the case will come up in September if you want to try it on the merits, but when you come back in, better get your dates and facts straight and tell me the truth, because, if you don't, somebody may be certified to the prosecuting attorney and prosecuted for perjury." This hearing was in 1955 and concerned another phase of this litigation, it is not necessary to say whether Judge Mueller had an opportunity to consider that record or whether he should have considered it, it was not a part of this proceeding and is not necessary to a disposition of this appeal and, therefore, the motion to incorporate it in this record is denied. Sup.Ct. Rule 82.12 (c).

Some other preliminary matters should be noted. Joseph Kral, age 61 when he died, had been divorced sometime before the purchase of this lot. As far as this record is concerned he was survived by a son, his niece, the appellant in this case, and her mother and there has been no administra-

tion on his estate. The Rubbelkes and Mr. Kral were not related although the three of them lived in the property involved in this litigation, and according to the respondents the price of the vacant lot was $950 and the value of the improvements about $9,600. It also appears from this transcript that sometime previously, by reason of a suit in a magistrate's court, Miss Aebli had successfully evicted the Rubbelkes from the premises. Their counsel said, however, by "A judgment by publication, and this witness didn't know and I, who represented him, knew nothing until it became a final judgment and an order was issued for the actual physical removal of these people from the premises." In this hearing before Judge Mueller the Rubbelkes testified that Mr. Kral had the title in his niece as a straw party "because he didn't want his ex-wife to get his property like she got the other property." They said that after the joint purchase of the lot and the beginning of construction of the house Mr. Kral explained, in Dorothy Aebli's presence, that she was a "straw party" and he said "he would build us this home because we were the only family he ever knew" and, "He said we could live in there forever." They then testified that they paid one half the consideration for the lot and the building of the house. When the trial judge made the suggestion that Mr. Kral was dead and the witnesses were "sealing the lips of Mr. Kral," plaintiffs' counsel said, "That was waived when the deposition was taken of the defendant."

■ Now to the merits of this motion to vacate the judgment entered upon this record. The respondents say that the appellant's motion to vacate on the ground "that the defendant has a good and meritorious defense" could only be ruled on by the trial court within thirty days after the rendition of the judgment (Sup.Ct. Rule 75.01) and that the appellant's affidavit does not state any ground upon which the judgment could be vacated, particularly in view of the fact that no evidence was offered in support of the motion. It is true that

a motion to vacate a judgment under Sup. Ct. Rule 74.32 and section 511.250, V.A. M.S., may not be employed as a substitute for an appeal or to test the sufficiency of the evidence to support the principal action. Edson v. Fahy, Mo., 330 S.W.2d 854. However, the respondents' argument overlooks the essential nature and function of such motions, they contemplate irregularities patent on the face of the record antecedent to the judgment and, in certain circumstances, may operate as a substitute for a writ of error coram nobis if the facts and circumstances justify it. Edson v. Fahy, supra; Cross v. Gould, 131 Mo. App. 585, 110 S.W. 672. The mere existence of a defense to the original action is ordinarily not a ground for vacating a judgment, before relief can be granted "an independent ground for such relief, apart from the mere existence of a good defense, must be shown," but it would be but a futile gesture to vacate a judgment for irregularities in the absence of a valid defense and that allegation shows the necessity of the motion and good faith. Annotation 174 A.L.R. 10, 16–18. And, a common defense to either a suit to quiet title or to establish a resulting trust is the claimant's good title or furnishing the consideration. 174 A.L.R., loc. cit. pp. 143, 148.

As to this particular proceeding and motion and irregularities upon the face of the record there are two matters; one, the defendant's lack of notice of the trial, her failure to appear and at the time her lack of counsel, the last lawyer having withdrawn on March 23, 1956, and, second, the plaintiffs' amendment of their petition on the date of the hearing, April 14, 1959, without notice to the defendant. It will be observed that after the unlawful detainer suit and after the injunction hearing on June 14, 1955, and after the withdrawal of counsel the cause was apparently dormant, there were no record entries and no activity of record until the case was heard more than four years later, on April 14, 1959. As noted, the defendant filed an answer on January 18, 1955. In her mo-

tion she states that she had heard nothing concerning the case since 1956, thought it had been dismissed, and has "no recollection of ever receiving any notice of the date or time of the hearing." And, of course, she was not present and was not represented by counsel when the case was heard. When the case was called for trial the first thing that happened was that plaintiffs' counsel stated that he would like to file a copy of a letter he had written defendant advising her the case "was on this Court's docket today." He said, "The letter was sent out to her First Class Mail, with postage prepaid return envelope, and it was not returned. That is the address where she lives, as far as I know, your Honor." Near the close of the hearing the trial judge said, "I do not know why the person whose name in which this property was put is not here this morning." Counsel replied, "I don't know that. I wrote a letter on my own stationery and sent the original out to the defendant. I had no contact with her or anyone else."

It is not necessary to comment on the sufficiency or adequacy of counsel's letter as notice of so important a matter; there being no requirement that he serve a notice, it was probably sufficient. Sup.Ct. Rule 83.12. However, in Murray v. United Zinc Smelting Corp., Mo., 263 S.W.2d 351, 355, after defendant's counsel withdrew, the record recites that "thereupon *the court notified defendant* of the withdrawal and of the setting of the cause 'on this date.'" And it is reassuring to note the infinite patience of the court when the defendant failed to appear in Brown v. Stroeter, Mo. App., 263 S.W.2d 458. There is no statute requiring notice of trial and it does not appear that local court rules required it, and in the absence of rule or statute "it is not necessary to give a party litigant notice," he and his counsel are required to keep themselves informed of the time a case is set for trial. 53 Am.Jur., Sec. 10, p. 32; 88 C.J.S. Trial § 11, p. 39. Nevertheless, in In re Jackson's Will, Mo.App., 291 S.W.2d 214, it was held that the trial

court had erred in overruling a motion to vacate a judgment appointing a successor trustee, the order appointing the trustee having been made without notice to the beneficiaries. But, as indicated, it is not necessary to consider the notice or lack of it as a determinative factor, it was, however, a background fact and circumstance.

On the day the case was tried, April 14, 1959, there was this entry, "by leave of court, plaintiffs amended their petition by interlineation." The first amendment was "On page 1, paragraph 2, line 5," after the word "Aebli" there was inserted "as the straw party and in trust and as trustee for plaintiffs and said Kral." The second amendment was "on page 4, line 3" after the word "property" and was "that the court order, adjudge and decree that defendant is a straw party and holds said real estate in trust and that the plaintiffs are now the sole owners of said real estate." The defendant was not notified of these changes in the petition and the respondents now say that these amendments made no change in the issues, worked no hardship on the defendant, made no change in her defense and did not constitute an irregularity within the meaning of the judgment vacation rule and statute. On the face of it these amendments would seem to be quite innocuous but it will be remembered that it was in Count II that plaintiffs alleged a resulting trust and that in but "an undivided one-half interest therein." These amendments by interlineation were not to Count II, they were to and in Count I and originally Count I was for specific performance of an agreement between, largely, the plaintiffs and the deceased Kral, without these two interlineations Count I did not plainly allege and rely upon a resulting trust in the entire property as a ground of recovery.

■ As the respondents urge, the greatest liberality is allowed in the amendment of pleadings, before a responsive pleading is filed "as a matter of course" (Sup.Ct. Rule 55.53) or "as a matter of right" (Savings Finance Corp. v. Blair, Mo.App., 280 S.W.2d 675, 677), otherwise a party may amend his pleading only by leave of court but "leave shall be freely given when justice so requires." Sup.Ct. Rule 55.53. Furthermore, a pleading may be amended, in the court's discretion, after default or to conform to the proof (Sup.Ct. Rule 55.54) "but a substantial and material amendment cannot be made without allowing defendant an opportunity to come in and answer." 71 C.J.S. Pleading § 287, pp. 629–630. If there is a substantial and material amendment, even a party in default is entitled to notice of the fact "in the furtherance of justice." 71 C.J.S. Pleading §§ 310, 312, pp. 700, 701; 41 Am. Jur., Sec. 317, p. 511; 49 C.J.S. Judgments § 194, p. 340. In Savings Finance Corp. v. Blair, supra, there was an amendment to a suit on a note after default but, as the opinion carefully notes, a copy of the amended petition was mailed to defendant's counsel two months before judgment was entered. In this case these material amendments were made on the day the case was tried and it is not even claimed that the defendant had notice of them. In this connection there is another rule, it is not necessary, ordinarily, to serve pleadings on parties in default for failure to appear "except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in this code." Sup.Ct. Rule 43.01(a).

■ Leave to amend pleadings "shall be freely given when justice so requires" (V.A.M.S. § 509.490), and judgments are not to be lightly vacated for frivolous reasons, but if a litigant is entitled to notice that within thirty days of rendition a trial judge is about to exercise his control over a verdict and order a new trial (Sup.Ct. Rule 75.01; Albert J. Hoppe, Inc. v. St. Louis Public Service Co., 361 Mo. 402, 235 S.W.2d 347, 23 A.L.R.2d 846) a fortiori even a defaulting party is entitled to notice of substantial and material amendments by interlineation. In re Jackson's Will, supra; 41

Am.Jur., Sec. 317, p. 511; 71 C.J.S. Pleading § 310, p. 700. There is also an applicable analogy and lesson in Wooten v. Friedberg, 355 Mo. 756, 198 S.W.2d 1; Badger Lumber Co. v. Goodrich, 353 Mo. 769, 184 S.W.2d 435, and Poindexter v. Marshall, Mo.App., 193 S.W.2d 622. For these indicated reasons there is an irregularity upon the face of the record, and in the particularly detailed circumstances the trial court should have vacated its judgment and afforded the appellant an opportunity to be heard upon the merits of the action, accordingly the judgment is reversed and the cause remanded with directions to vacate the judgment.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.