SUNRISE TURQUOISE, INC., Appellant,

v.

CHEMICAL DESIGN COMPANY,
INC., Appellee.

No. 94–CA–000029–MR

Court of Appeals of Kentucky.

April 14, 1995.

J. Michael Poole, Bruce Garrett Anderson, George Salem, Jr., Louisville, for appellant.

Mark J. Sandlin, Stephen B. Humphress, Louisville, for appellee.

Before EMBERTON, McDONALD and SCHRODER, JJ.

## OPINION

EMBERTON, Judge.

Sunrise Turquoise, Inc., appeals from the trial court's order which held that a judgment entered by a Florida state court was valid and entitled to full faith and credit in Kentucky. The issues before this court involved the enforceability of a judgment obtained in another state which has been registered in Kentucky pursuant to the Uniform Enforcement of Foreign Judgments Act, Ky. Rev.Stat. (KRS) 426.950–.990. The other issue is whether a counterclaim may be filed once a judgment is registered under the Act. We conclude that the trial court properly enforced the Florida court's order.

Appellee, Chemical Design Company, Inc. (CDC), a Florida corporation, filed suit in a Florida state court against Sunrise, a corporation organized under the laws of Kentucky. No answer was filed by Sunrise in response to this lawsuit, although it acknowledges notice of the action. Since Sunrise entered no answer, nor entered a special appearance to contest jurisdiction, the Florida court entered default judgment against it.

CDC then sought to enforce the judgment in Kentucky pursuant to the Uniform Enforcement of Foreign Judgments Act and filed the appropriate papers with the Jefferson Circuit Court. In response, Sunrise filed motions to set aside the judgment and to stay its execution. Sunrise also attempted to assert a counterclaim presenting affirmative defenses. Sunrise took the position that the Florida court lacked personal jurisdiction; that the judgment was void; and, therefore, not entitled to full faith and credit in Kentucky. Finally, Sunrise argued that the Florida judgment should be set aside because it was a default judgment.

The trial court determined that the Florida court had personal jurisdiction over Sunrise pursuant to Florida's long-arm statute and Florida case law. The trial court denied Sunrise's motion to stay execution and held the default judgment was final and was properly registered in Kentucky. Sunrise then moved, pursuant to CR 59.05, to vacate the order. The trial court denied the motion and this appeal followed.

Sunrise first argues that the Florida court lacked personal jurisdiction and improperly exercised jurisdiction in violation of the United States and Kentucky constitutions. In support of its argument, Sunrise maintains it did not have the requisite minimum contacts with the state for the Florida court to invoke jurisdiction. It argues then that since the exercise of jurisdiction by the Florida court was improper, the judgment is not entitled to full faith and credit in Kentucky.

Our analysis begins with the Uniform Enforcement of Foreign Judgments Act. KRS 426.950 defines a foreign judgment as "any judgment, decree, or order of a court of the United States or any other court which is entitled to full faith and credit in this Commonwealth."

KRS 426.955 outlines the procedure for filing and the status of foreign judgments as follows:

> A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the clerk of any court of competent jurisdiction of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of this state and may be enforced or satisfied in like manner.

No doubt, the purpose of the act is to give holders of foreign judgments the same rights and remedies as the holder of a domestic judgment. While Kentucky has not yet addressed questions under the uniform act, other jurisdictions have.

The law in Kentucky is that a sister state's judgment is entitled to full faith and

credit and to registration if the judgment is valid under that state's own laws. *Morrel & West v. Yazel,* Ky.App., 711 S.W.2d 501, 502 (1986). Therefore, the question before us is whether the trial court properly applied the Florida long-arm statute in finding that the Florida Court had personal jurisdiction over Sunrise.

■ We agree with the trial court that personal jurisdiction over Sunrise is supported under two provisions of the long-arm statute. Florida Statute 48.193(1)(a) allows personal jurisdiction over non-residents for "operating, conducting, engaging in, or carrying on business ... in this state." Subsection (g) also allows personal jurisdiction for "breaching a contract in the state by failing to perform acts required by the contract to be performed in this state." *See also Venetian Salami Co. v. J.S. Parthenais,* 554 So.2d 499 (Fla.1989).

Sunrise argues that jurisdiction is not supported because it had no offices, nor employees in the state of Florida. Further, Sunrise contends that its initial contact with CDC was at a trade show in California. According to Sunrise, a CDC representative visited Sunrise at its Kentucky office. Afterwards, Sunrise placed orders from Kentucky, and continued to do so over a period of years. Sunrise was never physically present to transact business with CDC in Florida.

We find sufficient evidence to support jurisdiction of the Florida court. There was evidence before the trial court that Sunrise:

(a) mailed catalogues to businesses in Florida;

(b) attended and sold products at trade shows in Florida;

(c) sold products to and through Florida distributors;

(d) entered over fifty contracts with CDC in an 18 month period;

(e) mailed payments, pursuant to contractual agreements, to CDC in Florida;

(f) mailed payments and checks to CDC in Florida;

(g) knew that CDC's principal place of business was located in Florida;

(h) knew that the goods which Sunrise purchased from CDC were made in and shipped from Florida;

(i) knew that CDC's cause of action arose from Sunrise's activities in Florida.

Sunrise contends that Florida is without jurisdiction since its initial meeting with CDC took place in California. However, we find this minor fact, when considered in the face of the numerous and long established course of conduct, to be of little significance.

Since it appears that Sunrise had the contacts with Florida to support a finding of jurisdiction under the Florida long-arm statute, a further question is whether Sunrise had minimum contacts sufficient to satisfy constitutional due process. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). *See Venetian Salami Co., supra.*

■ The three-pronged test for minimum contacts, as set forth in *International Shoe, supra,* requires that: (1) defendant has purposely availed itself of the privilege of acting within the state; (2) the cause of action must arise from defendant's activities; and (3) enough connections to the state must exist so that jurisdiction would be reasonable. *See also Mohler v. Dorado Wings, Inc.,* Ky.App., 675 S.W.2d 404 (1984). In terms of a due process analysis, the defendant's connection must be such "that he should reasonably anticipate being haled into court there." *Burger King, supra,* 471 U.S. at 474, 105 S.Ct. at 2183 (citing *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

■ The requirement of "purposeful availment" is significant since it assures that the defendant will not be haled into a jurisdiction as a result of "random," "fortuitous," or "attenuated" contacts. *Burger King, supra,* 471 U.S. at 472, 105 S.Ct. at 2181–82. Accordingly, where the defendant has deliberately engaged in significant activities within a state or created continuing obligations between himself and residents of the forum, he has availed himself of the privilege of conducting business there. Once minimum contacts

have been established, the issue becomes whether the assertion of personal jurisdiction over the individual would comport with the notions of "fair play and substantial justice." *International Shoe Co., supra,* 326 U.S. at 320, 66 S.Ct. at 160.

We find that the totality of the evidence indicates that the Florida court properly exercised jurisdiction over Sunrise in accordance with constitutional due process mandates. As a result, the Florida judgment is entitled to full faith and credit in Kentucky.

■ Sunrise next argues that the Florida default judgment should have been set aside by the trial court. Sunrise bears the burden to show that there is good cause to do so. To show good cause requires the moving party to make a timely showing of the circumstances under which the default judgment was procured. Specifically, the moving party must show: (1) a valid excuse for the default; (2) a meritorious defense to the claim; and (3) absence of prejudice to the non-defaulting party. *Perry v. Central Bank & Trust Co.,* Ky.App., 812 S.W.2d 166, 170 (1991). Absent a showing of all three elements, the default judgment will not be set aside.

■ Here, Sunrise had notice of the Florida action but maintains it did not defend the action because it thought the Florida court lacked jurisdiction. Sunrise cannot now raise matters which should have been presented to the trial court in Florida. In view of Sunrise's action, or perhaps its inaction, with regard to the Florida lawsuit, we find no good cause which would justify setting aside the default judgment.

■ Finally, Sunrise claims that the trial court should have permitted the entry of its counterclaim under the language of the act. We disagree.

The language of KRS 426.955 states that a foreign judgment shall be treated "in the same manner as a judgment of any court of the state." Further, a judgment filed in accordance with the statutory requirements has the "same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the court of this state and must be enforced or satisfied in like manner." We conclude that the clear language of the statute precludes the filing of a counterclaim. While we do not find it necessary to perform a lengthy review of cases from other jurisdictions, let it suffice to say that we have reviewed numerous cases from other jurisdictions and our conclusion is in accord with the majority rule. *See e.g., Gem Mfg. Corp. v. Lents Industries,* 276 Or. 87, 554 P.2d 166 (1976); *Practice Management Assoc., Inc. v. Thurston,* 225 Ill.App.3d 470, 167 Ill.Dec. 767, 588 N.E.2d 408 (1992); *appeal denied,* 145 Ill.2d 643, 173 Ill.Dec. 13, 596 N.E.2d 637 (1992).

Moreover, to permit Sunrise to file a counterclaim at this juncture would thwart the underlying purpose of the Uniform Enforcement of Judgments Act. The language of our statute is more closely aligned with the 1964 version of the Act which provides for the direct registration of a foreign judgment. *See Gem Mfg. Corp., supra,* 554 P.2d at 168 n. 5. The 1964 version simplified the procedure of registration, by eliminating the need for the court, where the registration is sought, from having to issue an entirely new judgment. It is simply too late for Sunrise to raise such claims.

The judgment of the trial court is affirmed.

All concur.